AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States District Court
Southern District of Texas
**FILED**
MAR 15 2018
Clerk of Court

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Stephanie MONTERO, YOB: 1996 | ) | Case No. M-18-0544-M |
| Citizenship: United States | ) | |
| | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 14, 2018__ in the county of __Hidalgo__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Possession with Intent to Distribute Cocaine |
| 21 U.S.C. § 952 | Illegal Importation of Cocaine |

This criminal complaint is based on these facts:
On February 23, 2018, Stephanie MONTERO were detained attempting to enter the United States through the Hidalgo, Texas Port of Entry with approximately 17.74 kilograms of cocaine concealed inside the rear floor board of the vehicle she was driving.

SEE ATTACHMENT "A"

✓ Continued on the attached sheet.

_____
*Complainant's signature*

Christina Bergeron Flores, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/14/2018

_____
*Judge's signature*

City and state: McAllen, Texas

U.S. Magistrate Judge J. Scott Hacker
*Printed name and title*

On February 23, 2018, U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) in McAllen, Texas received a request for investigative assistance from the U.S. Customs and Border Protection/Office of Field Operations (CBP/OFO) at the Hidalgo Port of Entry (POE) in Hidalgo, Texas. Customs and Border Protection Officers (CBPOs) detained Stephanie MONTERO (hereafter MONTERO) after discovering 15 packages containing a white powdery substance, and weighing a total of 17.74 kilograms (kg), concealed within non-factory compartments in the back floorboard of the vehicle MONTERO was driving when applying for entry into the U.S. MONTERO was encountered with her two children.

At primary inspection, MONTERO stated to CBPOs that she was traveling into the U.S. to go shopping. CBPO referred the vehicle for a CBP Land Border inspection. During secondary inspection, CBPO stated he observed MONTERO exhibited nervous behavior. CBPOs observed loose carpeting in the floorboard in front of the backseat of the vehicle and the bolts securing the floorboard to the vehicle showed clear signs that the vehicle's floorboard had been modified. CBPOs located a non-factory attachment under the vehicle. A non-intrusive X-ray inspection (Z-portal) of the vehicle was conducted and discovered anomalies located in near the middle driver-side area of the vehicle. CBPOs recovered 15 packages of white powdery substance covered by a trapdoor inside of the back floorboard of the vehicle which field-tested positive for properties of cocaine.

HSI Special Agents and a HSI Task Force Officers (TFO) interviewed MONTERO, post-Miranda Warning, regarding the purpose and details of her frequent travels into the U.S. from Mexico. MONTERO stated she was traveling into the U.S. to purchase groceries at a grocery store in McAllen, Texas. MONTERO stated that she frequently crosses into the U.S. to purchase groceries. A review of MONTERO's crossing history revealed weekly crossings in the vehicle she was driving. MONTERO stated that she had previous secondary inspections at ports of entry and had never any issues as a result of those encounters.

During the beginning of the interview of MONTERO, agents observed MONTERO crying and develop red blotches on her neck and chest. MONTERO refused to provide consent to search the two cellular telephones found in her possession. MONTERO stated she has not had consistent income for the last 8 months and is the sole financial support for her two children. MONTERO stated that she previously worked at a used clothing store in Hidalgo, Texas; however, she stated that childcare for her children was too costly. MONTERO stated that she resigned as she could not afford to continue working due to the expense of childcare. MONTERO stated she purchased the vehicle for $4,800 U.S. currency. MONTERO stated she had acquired large amounts of U.S. currency resulting from tax returns filed with the Internal Revenue Service (IRS) which she utilized to purchase the vehicle she was driving. MONTERO stated she did not have an

approximate amount of monetary reimbursement she received in tax returns.

When questioned about the condition of the vehicle she was driving, MONTERO stated she never noticed any deficiencies in the vehicle. MONTERO stated she had exclusive access to the vehicle she was driving. MONTERO denied having any knowledge of narcotics within her vehicle.

Based on this agent's training and experience in conjunction with my observations of MONTERO's physical demeanor and appearance and her story, it did not appear that MONTERO was being truthful.